THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RONALD COLEMAN, Defendant-Appellee.

Second District   No. 2—89—0109

Opinion filed February 15, 1990.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

John L. Sullivan, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Ronald M. Coleman, was indicted in the circuit court of Lake County on one count of unlawful possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)). The State appeals, pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)) from the order of the circuit court granting defendant's motion to suppress evidence and quash his arrest.

Defendant filed a motion to quash arrest and suppress evidence and supporting memoranda of law, contending that the police search of his apartment between 2:48 and 3:59 p.m. on September 8, 1988, was made without authority of a valid search or arrest warrant and was otherwise unlawful. He asserted that the police unlawfully remained in his apartment. He further alleged that the seizure of his person and the white paper bag in his hand, the search of the bag and his person, and his arrest were without the authority of a valid search or arrest warrant and were without probable cause.

The record reveals the following facts were adduced at the hearing on the motion to suppress. On September 6, 1988, an individual filed with the Libertyville police department a complaint for assault

against defendant's roommate, Joseph Gradzik. The complainant indicated defendant and Gradzik were home at their apartment located at 835C Country Club Drive, Libertyville, Illinois, on this date.

Officer Gallina of the Libertyville police department obtained an arrest warrant for Gradzik for the misdemeanor offense of aggravated assault. On September 8, 1988, Officer Gallina, accompanied by Officer Koval, an agent with the Metropolitan Enforcement Group (MEG) of Lake County, went to 835C Country Club Drive, Libertyville, to arrest Gradzik. They knew defendant resided at this address with Gradzik because they had prior contact with both persons and had received anonymous telephone reports from neighbors of suspected narcotics trafficking from the residence.

Gallina and Koval arrived at approximately 2:48 p.m. and knocked on the back door, which was opened by Gradzik. Pursuant to the arrest warrant, the officers entered the apartment, and, after some initial resistance, Gradzik submitted to the arrest and was handcuffed. Officer Gallina asked Gradzik whether he had any weapons in the apartment, and Gradzik replied that he had a gun in a cabinet over the television set across the room. Officer Koval approached the cabinet, opened it and found an automatic handgun inside. At this time, Officer Koval noticed a glass vial with white residue on a small stand to the right of the television and a similar vial with similar residue on a glass top table to the left of the television. Koval also saw a playing card, a razor blade, and additional white residue on the glass top table. From this vantage point, Officer Koval could see into the kitchen, where he observed more white residue on the counter and the floor. He further noted another razor blade, a glass pipe and an open can containing screens. These items indicated cocaine usage to Officer Koval, an experienced narcotics enforcement officer.

Koval then retrieved a field test kit from his automobile and performed a field test on the residue on the glass vials, the playing card, the first razor blade and the table top, and noted a positive reaction for the presumptive presence of cocaine. The white powder in the kitchen tested negative. Gallina made a quick search of the apartment to see if anyone else was there but found no one.

Officer Gallina contacted the Libertyville police department and arranged to transport Gradzik back to police headquarters. When questioned about his roommate's whereabouts, Gradzik responded that defendant would return in approximately an hour. According to Gallina, about 15 to 20 minutes elapsed between the initial entry and Gradzik's removal. Officer Koval conferred by telephone with an assistant State's Attorney and then called for additional MEG agents to

assist in a search of the premises. Following these conversations and the arrival of MEG agents Hunter and Eliopoulos at about 3:20 to 3:25 p.m., Koval and the other MEG agents searched the entire residence, including upstairs rooms and the basement, closets, cabinets, under beds, and in containers. Gallina followed with a camera, photographing various locations, beginning where they arrested Gradzik and continuing throughout the residence, and miscellaneous items recovered by the agents. During this time, the telephone rang and a voice, later identified as defendant's, stated on the answering machine that he would be there in a little while. At the suppression hearing, Koval testified that he told agents Hunter and Eliopoulos to arrest defendant for possession of a controlled substance upon his return, if in fact he came back to the apartment. Koval's testimony indicates that he had collected and inventoried the items found in plain view in the den and kitchen prior to the arrival of the additional MEG agents.

Defendant arrived at the apartment at approximately 3:59 p.m. Koval said defendant entered the apartment and asked the agents who they were and what they were doing. The agents asked him the same question, and defendant responded that he was Ronald Coleman and he lived in the apartment. Koval testified that Agent Hunter then told defendant, "We're the police and you're under arrest."

When defendant entered the apartment, he was carrying a small white paper bag in his right hand. According to defendant, one of the officers grabbed the bag immediately after he entered the apartment. Koval testified that upon his arrest, the agents seized the bag and conducted a search of defendant's person and the bag. The bag contained what appeared to be approximately two ounces of a white chunky substance later determined to be cocaine. Koval testified he then arrested defendant for the additional offense of unlawful possession of a controlled substance with intent to deliver. The MEG agents continued searching throughout the apartment until approximately 4:30 p.m. The search failed to reveal any further cocaine; however, the agents did find a scale with a white powdery residue and a plastic bag with a similar residue. Officer Koval testified that he did not perform a field test on either of these items. The agents also located $24 in cash inside an electronic game and some syringes, which were later determined to be for the purpose of insulin administration.

The trial court granted defendant's motion to suppress, finding that although the officers observed, during the course of a search incident to Gradzik's arrest, small quantities of cocaine in plain view, the officers lacked probable cause to believe defendant had been in the apartment simultaneous with the presence of cocaine. The order sup-

pressed the cocaine seized from the paper bag defendant carried when he entered his residence.

The State contends on appeal that the trial court's suppression of the cocaine in the paper bag taken from defendant is manifestly erroneous because the police had probable cause, arising out of the seizure of the cocaine residue in the apartment being occupied by defendant, to believe that defendant had committed the offense of unlawful possession of a controlled substance. According to the State, it was this probable cause which authorized them to arrest defendant and therefore the search of the bag was incident to a lawful arrest. Defendant initially responds that the trial court's finding of no probable cause is supported by the evidence. Alternatively, he maintains that the police were not lawfully on the premises at the time of his arrest.

We believe the dispositive issue here is whether it was unreasonable under the fourth amendment for the police to remain in defendant's apartment beyond the time necessary to effect the arrest of Gradzik and properly secure the evidence observed in plain view.

■ By its terms, the fourth amendment forbids only unreasonable searches and seizures. (*Segura v. United States* (1984), 468 U.S. 796, 806, 82 L. Ed. 2d 599, 609, 104 S. Ct. 3380, 3386.) The fourth amendment's protection of a person's privacy is no more clearly defined than when bounded by the unambiguous physical dimensions of a person's home. (*Payton v. New York* (1980), 445 U.S. 573, 589, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1381.) In terms that apply equally to seizures of property and to seizures of persons, the fourth amendment has drawn a firm line at the entrance to the home. (*Payton*, 445 U.S. at 590, 63 L. Ed. 2d at 653, 100 S. Ct. at 1382.) Consequently, absent exigent circumstances, the police must have an arrest warrant to enter a home for the purpose of making a routine felony arrest. *Payton*, 445 U.S. at 590-91, 63 L. Ed. 2d at 653, 100 S. Ct. at 1382.

■ Before proceeding with our analysis, we find it essential to note that in this case we are not dealing with an unlawful entry, but rather, are concerned with the question of the police remaining within a home beyond the time necessary to carry out their original lawful purpose which rendered their initial entry reasonable. We believe the same privacy interests implicated by an unlawful entry are also at stake when the police unlawfully remain within a home after an initial lawful entrance. (See *People v. Boehm* (1980), 89 Ill. App. 3d 176, 179, 411 N.E.2d 1192; see also 2 W. LaFave, Search & Seizure §6.1(c), at 585 (2d ed. 1987).) Just as a seizure reasonable at its inception may become unreasonable as a result of its duration or for other reasons (*Segura*, 468 U.S. at 812, 82 L. Ed. 2d at 613, 104 S. Ct. at 3389), so

may a lawful entry become an unlawful intrusion if the police remain beyond a time reasonably necessary to complete the purpose of their original lawful entry or engage in other unlawful conduct that would render the intrusion unreasonable. The sooner the police complete their lawful duties within the residence, the less will be their subsequent interference with the privacy interests of the occupants. See *Michigan v. Tyler* (1978), 436 U.S. 499, 510, 56 L. Ed. 2d 486, 499, 98 S. Ct. 1942, 1950.

■ In this case, there is no question that the police lawfully entered defendant's residence based on the arrest warrant for Gradzik. We also believe that entry for purposes of executing a valid arrest warrant necessarily entails remaining within the residence for a reasonable amount of time to carry out the purpose of the warrant. For example, it may be necessary to conduct a search for the subject of the warrant (*Steagald v. United States* (1981), 451 U.S. 204, 214 n.7, 68 L. Ed. 2d 38, 46 n.7, 101 S. Ct. 1642, 1648 n.7), perform a protective sweep (*People v. Free* (1983), 94 Ill. 2d 378, 394-95, 447 N.E.2d 218), or conduct a search incident to a valid arrest for protection of the police and preservation of the evidence (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034). Here, Gradzik was arrested pursuant to a valid arrest warrant, and it was not unreasonable for the police to have conducted a protective sweep as was done or to conduct a search incident to Gradzik's arrest. Nor was it unreasonable for the police to wait inside the apartment for a unit to arrive to transport Gradzik to the station house.

Additionally, Koval observed in plain view what he reasonably believed to be residue and paraphernalia related to cocaine use. It was not unreasonable for the officers to seize that evidence and to take the steps necessary to properly secure it. The fact that the officers continued to remain inside defendant's residence for a sufficient amount of time necessary to carry out those lawful purposes does not constitute an unreasonable intrusion into defendant's fourth amendment privacy. In this regard, the State argues that the police properly remained in the premises for a reasonable amount of time to photograph and catalog the items found in plain view.

However, under the circumstances present here, it is clear that the police remained within defendant's residence beyond the time reasonably necessary to perform their lawful purpose there, to arrest Gradzik and secure the evidence in plain view. The police were in defendant's home for 71 minutes before defendant arrived. We do not believe under these circumstances, where the subject of the warrant was readily arrested and the evidence observed was in plain view,

that this was a reasonable amount of time for the police to carry out their duties. The police had collected and inventoried the evidence found in plain view at Gradzik's arrest before commencing the search of the entire house some 30 or more minutes before defendant arrived. The record discloses that the purpose for remaining in the apartment for this length of time following the call to the State's Attorney and the summoning of two MEG agents to assist in the search of the premises was to conduct an illegal, warrantless room-to-room search of the entire residence, including the taking of photographs and the seizing of numerous items found throughout the apartment, and not to process the evidence of cocaine residue initially found shortly after entering the apartment. Thus, we conclude that the lawful purpose terminated substantially before defendant's arrival.

We note the absence of any exigent circumstances which might have rendered the intrusion reasonable. An otherwise unconstitutional warrantless seizure within a defendant's home may be rendered reasonable if exigent circumstances exist which excuse the need for an arrest warrant. (*Steagald v. United States* (1981), 451 U.S. 204, 211, 68 L. Ed. 2d 38, 45, 101 S. Ct. 1642, 1647; *Payton*, 445 U.S. at 590, 63 L. Ed. 2d at 653, 100 S. Ct. at 1382.) Such circumstances might include hot pursuit, entry into a burning building, or preservation of evidence. (*Tyler*, 436 U.S. at 509, 56 L. Ed. 2d at 498, 98 S. Ct. at 1949-50.) None of those or similar circumstances are present in this case to justify the officers remaining in defendant's residence.

In *People v. Boehm* (1980), 89 Ill. App. 3d 176, 411 N.E.2d 1192, this court held that a warrantless, nonexigent arrest of the defendant in his apartment following execution of a search warrant therein constituted an unreasonable seizure where the police had completed execution of the search warrant and remained in defendant's apartment solely to arrest defendant upon his arrival. (89 Ill. App. 3d at 178-79, 411 N.E.2d at 1193.) Even assuming the police to have had reasonable grounds to arrest the defendant, the court found the authority to remain within the defendant's apartment to be limited by the constitutional requirements set forth in *Payton v. New York*. (89 Ill. App. 3d at 178-79, 411 N.E.2d at 1193.) Additionally, the court was unpersuaded by the fact that the police expected the defendant to return soon because there was no indication as to why the police could not have waited in a place they were allowed to be rather than inside the apartment. (89 Ill. App. 3d at 178, 411 N.E.2d at 1193.) We find *Boehm* to be sufficiently analogous to the case at bar as to further support our position that it was unreasonable for the police, under

these circumstances, to remain in defendant's home after they concluded their lawful purpose there. See also *New Hampshire v. Chaisson* (1984), 125 N.H. 810, 486 A.2d 297.

Although neither party refers to *Segura v. United States* (1984), 468 U.S. 796, 82 L. Ed. 2d 599, 104 S. Ct. 3380, we are compelled to point out the distinctions between this case and *Segura*. In *Segura*, the Supreme Court held that it was not unreasonable for police who had unlawfully entered defendant's residence to remain there for 19 hours awaiting a search warrant, which was based on information obtained by the police before the entry into the residence. We emphasize that in *Segura*, unlike here, the police did not exploit their presence or engage in any unlawful search of the residence. (*Segura*, 468 U.S. at 812, 82 L. Ed. 2d at 614, 104 S. Ct. at 3389.) Furthermore, in *Segura* the officers were waiting to obtain a search warrant, whereas here there is no such identifiable lawful basis for remaining on the premises after the police completed their arrest of Gradzik and processing of the evidence. Consequently, we believe the holding in *Segura* to be a narrow one that does not apply to the circumstances present here.

As we conclude that the conduct of the police in remaining in defendant's residence after they analyzed and secured the cocaine residue and related paraphernalia observed in plain view constituted a violation of defendant's fourth amendment rights, we need not consider the question of whether the police had probable cause to arrest defendant based on the cocaine residue and paraphernalia found in a common area of the residence.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT, P.J., and McLAREN, J., concur.