THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PAUL RENDE, Defendant-Appellee.

Second District   No. 2—92—0072

Opinion filed December 10, 1993.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers, Stephen E. Norris, and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

George P. Lynch, of George Patrick Lynch, Ltd., of Downers Grove, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Paul Rende, was indicted for residential burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—3(a) (now 720 ILCS 5/19—3(a) (West 1992))). He moved to quash two search warrants and suppress evidence obtained as the result of the warrants. The trial court denied the motion to suppress the first warrant. With certain exceptions we shall detail later, the court quashed the second search warrant, resulting in the suppression of most of the evidence seized in a search of the house at which defendant and his family resided.

The State appeals (see 134 Ill. 2d R. 604(a)), arguing that the trial court erred in suppressing certain evidence seized pursuant to the second warrant. The State concedes that the warrant did not describe most of the items to be seized with sufficient particularity (see U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6). However, the State argues that the trial court erred in suppressing certain figurines that the warrant described with particularity as "Lladro figurines." We agree with the State that this description was sufficiently particular, and we reverse the trial court's suppression of the Lladro figurines.

The first warrant involved in this case (warrant number S5288) was issued by Judge Brian Telander at 10:40 a.m. on November 6, 1990. It was based on a sworn complaint executed by Detective Steven Hochstetler of the Naperville police department. In the complaint, Hochstetler stated that, during an investigation of residential burglaries that took place between September 1989 and August 1990, records obtained by a grand jury showed that on each of at least three occasions, a cellular telephone listed to defendant was used to call the victim's residence immediately before the burglary took place. Hochstetler stated further that a security specialist from Motorola told him that the cellular phone had been stolen from Motorola in August 1989. Records obtained by grand jury subpoena indicated that the cellular phone was still in use and listed to defendant as of October 17, 1990; a representative of Cellular One told Hochstetler that, as of November 6, 1990, the phone was still listed to defendant.

The warrant authorized the police to search the person of defendant, the single-family residence at 1610 North 22d Avenue in Melrose Park, and the attached garage and two vehicles therein for evidence of theft (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(1) (now 720 ILCS 5/16—1(a)(1) (West 1992))). The warrant specified the following evidence to be seized: a "Motorola hand-held cellular telephone, electronic serial number 811F181, using number 217-9042; proof of ownership of telephone, including monthly bills, showing use and method of payment." The police executed the warrant at about 6:20 a.m. on November 7, 1990.

At 2:03 p.m. on November 7, 1990, the police obtained the second warrant (numbered S5684) from Judge Richard A. Lucas. Detective Hochstetler's sworn complaint for the warrant stated the following facts. When Hochstetler and other officers executed warrant S5288, they found the following items (among others): "pry tools, two-way radios, police radio frequency scanners, a book listing police radio frequencies, a book of street maps for the Chicago Metropolitan Area with handwritten marks in areas known to be residential areas, porcelain figurines, including, but not limited to, those with the brand name 'Lladro,' jewelry and loose precious stones, silver flatware, linens including pillowcases and towels, luggage and fur coats."

Hochstetler's complaint alleged that, since September 1989, he had been investigating a series of residential burglaries in Cook and Du Page Counties; over 20 of these burglaries had taken place in Naperville alone. The items listed in the complaint were among those regularly taken in such burglaries, which were normally effectuated with the aid of "pry-type tools."

Case investigation revealed further that on two occasions—May 26, 1990, and June 18, 1990—the cellular telephone registered to defendant was used to call the residence burglarized immediately before the burglary occurred. Telephone records showed further that the cellular phone was used to call three other residences on or about the time that these residences were burglarized. Also, defendant admitted on November 7, 1990, that the cellular phone in question belonged to him and that nobody else used it.

The warrant authorized the police to search the person of defendant and the residence at 1610 North 22d Avenue for evidence of theft and residential burglary

> "including but not limited to pry-type tools, a book of street maps for the Chicago Metropolitan Area with handwritten marks in areas known to be residential areas, two-way radios, police radio frequency scanners, *porcelain figurines, including but not limited to those with the brand name 'Lladro,'* jewelry including but not limited to watches, gold chains, loose precious stones and diamond rings, U.S. Currency and coins, silver flatware, linens, including but not limited to pillowcases and towels, and luggage used to transport stolen goods, and fur coats." (Emphasis added.)

After the police executed both warrants, defendant moved to quash both warrants. Defendant attacked the second warrant as lacking in probable cause and insufficiently particular in describing items to be seized. Initially, the trial court denied the motion to quash the first warrant and granted in its entirety the motion to quash the second warrant.

The State filed three timely motions regarding the decision to quash the second warrant and to suppress all evidence seized thereto. The first motion sought to sever the tainted part of the warrant from the valid part and to allow the admission of those items that the warrant described with sufficient particularity. Among these items, alleged the State, were two pry bars, the Chicago street map, and the porcelain figurines that had the brand name "Lladro."

The State's second motion requested the court to reconsider the grant of the motion to quash the second warrant. The State argued that, even if the descriptions of the items to be seized were overly broad, the police acted in reasonable good faith that the warrant was valid; thus, under *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, the evidence should not have been suppressed.

The State's third motion sought to allow the admission of items that the police seized in plain view while they were properly in the residence executing the first warrant. These items included two pry bars and a Lladro figurine of a lady with a donkey; the State alleged that the officer who saw this figurine in plain view immediately recognized that it was a stolen Lladro figurine.

The trial court denied the latter two motions. The court granted the motion to sever only insofar as it applied to the pry bars, the street maps, the two-way radios and the police scanners. The court refused to allow the admission of the other evidence seized pursuant to the second warrant.

In explaining his decision, the trial judge stated that the warrant's reference to "Lladro figurines" was "about as specific as asking for any and all Chevrolet automobiles." The judge explained that it is "common knowledge" that Lladro figurines are specifically designed and described. Thus, he concluded, the police could have described these objects more precisely, especially as they had investigated and compiled reports of the burglaries and, presumably, the owners of the stolen Lladro figurines presumably provided the police with sufficiently detailed descriptions of the stolen Lladros. Because the police presumably had this more detailed information ready and did not need to take immediate action, their reliance on the overly general second warrant was not objectively reasonable under *Leon*. The State timely appealed.

■ On appeal, the State argues that the warrant's reference to "Lladro figurines" satisfied the particularity requirements of the United States and Illinois Constitutions. It is not disputed that where a search warrant provides an insufficiently particular description of some, but not all, of the items to be seized, the court may sever the infirm portion of the warrant from the valid portion and need not suppress those items validly described. (*United States v. Cook* (5th Cir. 1981), 657 F.2d 730, 734.) The State argues that, although the warrant's description of other allegedly stolen items was excessively general, the specification of a distinctive brand name limited the discretion of the police and that the Lladro figurines could be admitted even if the rest of the warrant was bad. We agree.

■ A search warrant must particularly describe the place to be searched and the items to be seized. (U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6; *People v. Rixie* (1989), 190 Ill. App. 3d 818, 827.) How much particularity is required, and whether that requirement has been satisfied, must be determined with a close eye to the particular facts of the case. (*Rixie*, 190 Ill. App. 3d at 827; *People v.*

*Allbritton* (1986), 150 Ill. App. 3d 545, 547.) A major consideration for a court is the degree of exactitude or detail of description that could reasonably be expected under the circumstances, given the nature of the items involved and the progress of the police investigation at the time the warrant was issued. (*Rixie*, 190 Ill. App. 3d at 828; *Allbritton*, 150 Ill. App. 3d at 546; see also *United States v. Blakeney* (6th Cir. 1991), 942 F.2d 1001, 1026-27.) A generic description of the items to be seized is sufficient if a more specific description of the items to be seized is unavailable. (*United States v. Cook* (5th Cir. 1981), 657 F.2d 730, 733.) In cases involving warrants to seize stolen goods, generic descriptions may suffice where a particularized description is intrinsically difficult and the affidavit establishes a probability that the items sought will constitute a large portion of the inventory to be searched. See *Commonwealth v. Taylor* (1981), 383 Mass. 272, ____, 418 N.E.2d 1226, 1228 (and cases cited therein).

Although defendant argues that the trial court's decision is not manifestly erroneous, we believe that, as the facts of this case are not in dispute, the issue of whether the description "Lladro figurines" was sufficiently particular is one which we review *de novo*. (See *In re D.G.* (1991), 144 Ill. 2d 404, 408-09.) We conclude that, under the circumstances, the description does not run afoul of the constitutional requirement of particularity.

■ Initially, we note that the term "Lladro figurine" is not a *generic* description in the ordinary sense; the warrant did not merely name porcelain figurines (which is a generic term) but specified a particular brand of such figurines. (*cf. Allbritton*, 150 Ill. App. 3d at 546-47 ("chains" and "jewelry" were impermissibly generic where details could have been added); *Blakeney*, 942 F.2d at 1026-27 ("jewelry" inadequate where inventory of items taken from jewelry store was available to law enforcement officers); *Namen v. State* (Alaska App. 1983), 665 P.2d 557 (authorization to seize "jewelry" stolen from a particular residence insufficiently particular).) We take notice, as did the trial court, that this particular brand of figurine is ordinarily both distinctive and quite expensive.

Furthermore, despite the trial court's assumption to this effect, there is no evidence that the police had a particularized inventory of the stolen Lladro figurines that would enable them to distinguish the stolen figurines (which, it appears, were quite numerous) from those that might legitimately have been on the premises (which, given the expense of the items involved, was likely a very small number).

Under these circumstances, we believe that the trial court erred in refusing to admit the seized Lladro figurines. Read in context, the

warrant authorized the seizure of *stolen* Lladro figurines (or those which the police had probable cause to believe were evidence of burglary or theft). This limiting context is a crucial consideration. (See *People v. Mertens* (1979), 77 Ill. App. 3d 791, 800 (warrant authorizing seizure of handguns, rifles, and shotguns was adequate where context of warrant made it clear that items to be seized were stolen weapons and "not just any weapons"); see also *People v. Raicevich* (1978), 61 Ill. App. 3d 143, 145-46.) Also, from the affidavit accompanying the complaint for the warrant, it may be fairly inferred that the number of stolen Lladro figurines was likely to exceed greatly the relatively small number of such expensive objects that were likely to be the legitimate possessions of the residence searched. Thus, there was probable cause to believe that a large number of the stolen goods were present, a more precise description could not reasonably have been expected, and there was a high likelihood that the items seized were in fact unlawfully present.

Under such circumstances, the relatively broad description of the items sought was permissible. See *Raicevich*, 61 Ill. App. 3d at 147; *State v. Ruscoe* (1989), 212 Conn. 223, 233-34, 563 A.2d 267, 273-74, *cert. denied* (1990), 493 U.S. 1084, 107 L. Ed. 2d 1049, 110 S. Ct. 1144 (warrant authorizing seizure of allegedly stolen sterling silver candlesticks, napkin holders, and mug was sufficiently particular); *State v. Fitanides* (1988), 131 N.H. 298, 552 A.2d 1379, *cert. denied* (1989), 490 U.S. 1080, 104 L. Ed. 2d 662, 109 S. Ct. 2100 (upholding warrant to search defendant's premises for fireworks, slot machines, and smoke bombs where circumstances indicated it was likely that the items sought were those that had been stolen).

Even if the warrant's denotation of "Lladro figurines" was insufficiently specific, we conclude that the officers who executed the warrant could have believed in reasonable good faith that this brand-name description was sufficiently particularized to allow them to seize the Lladro figurines, even though much of the rest of the warrant was plainly overly broad. The "good-faith" qualification to the exclusionary rule applies to the issue of whether a warrant adequately describes the items to be seized. *Massachusetts v. Sheppard* (1984), 468 U.S. 981, 82 L. Ed. 2d 737, 104 S. Ct. 3424.

■ Defendant argues that, even if the warrant was facially valid, the suppression of the Lladro figurines was proper because the warrant was the fruit of information illegally obtained from the unauthorized use of telephone records that were obtained from a grand jury. (See *People v. DeLaire* (1993), 240 Ill. App. 3d 1012.) We agree with the State that defendant waived this issue by failing to raise it below

and thus depriving the State of the opportunity to present evidence on the matter. (See *People v. Franklin* (1987), 115 Ill. 2d 328, 336.) Moreover, we agree with the State that even the limited record here does not support defendant's assertion that the State was guilty of the type of impropriety that we condemned in *DeLaire*.

We reverse that part of the trial court's order suppressing the Lladro figurines seized pursuant to the second warrant, and we remand the cause for further proceedings. Those aspects of the trial court's order from which no appeal has been taken are affirmed.

Affirmed in part; reversed in part and remanded.

McLAREN and COLWELL, JJ., concur.