THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GUENTHER H. SCHOENING, Defendant-Appellee.

Second District   No. 2—01—0233

Opinion filed August 21, 2002.

Meg Gorecki, State's Attorney, of St. Charles (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Timothy K. Mahoney, Thomas J. Brosnan, and William P. Gibbs, all of McNamee & Mahoney, Ltd., of Dundee, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

The State charged defendant, Guenther H. Schoening, with the unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 1998)), the unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 1998)), and the unlawful possession of cannabis (720 ILCS 550/4(a) (West 1998)). The trial court granted defendant's motion to quash arrest and suppress evidence. Arguing that the trial court erroneously found that police officers executing a warrant to arrest defendant's companion could not ask defendant his name without first giving him the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), the State appeals. See 188 Ill. 2d R. 604(a). We reverse and remand.

During the hearing on defendant's motion, defendant called Kane County sheriff's deputy Steven Collins. Collins testified that at about 12 a.m. on May 5, 1999, he and Deputy Wolf executed a warrant to ar-

rest Colette Welch. They went to 6N531 Essex Street in St. Charles, which, according to the warrant and information obtained from the Secretary of State, was Welch's address. Collins and Wolf arrived in a squad car and were in uniform. As Collins approached the home, he heard the voices of a man and a woman coming from the front window. Wolf covered the rear of the residence.

Collins knocked on the front door and announced his office and the reason he was there. Looking through the window on the front door, he saw a woman approach and then walk into the hallway from which she emerged. Collins knocked repeatedly, and a man approached the door. When Collins repeated the purpose for his presence, the person responded that Welch was getting dressed and would be there shortly. The man went back and forth down the hallway.

After a few minutes, the man, whom Collins identifed in court as defendant, opened the door. Collins asked for Welch, and defendant replied that he thought she was in either the bedroom or the bathroom. By this time, Wolf had returned to the front entrance, and the officers entered the home. Collins testified that defendant never consented to the officers' entry. Collins saw several rifles or shotguns stored in a display case near the entrance. The officers asked defendant to sit on the living room couch while they looked for Welch. Twice, defendant began following the officers as they walked toward the bedroom. In response, the officers handcuffed defendant and sat him on the couch.

The officers found Welch hiding in the back bedroom and arrested her. The officers removed the handcuffs from defendant. As the officers were taking Welch outside, they "waited a moment." They allowed Welch to kiss defendant and, for the purpose of preparing a report, asked defendant his name and birth date. Defendant told the officers that he was Walter H. Schoening and was born on August 3, 1966. At the time, the officers did not know defendant's identity. After obtaining the information, the officers walked Welch outside.

As the officers were escorting Welch to a squad car, she told them that defendant's name actually was Guenther Schoening. The officers ran a computer check and discovered that there were two outstanding warrants for Guenther Schoening. Welch asked for her purse, and the officers returned to the house to retrieve it. The officers knocked on the door and, when defendant answered, they told him that they had come for Welch's purse. Defendant allowed them to enter. After finding the purse near the front entrance, the officers asked defendant if he had any identification. Defendant stated that his identification was in the bedroom, and defendant and Wolf started to walk back to the bedroom area. After defendant stated that his name was Guenther

Schoening, the officers arrested defendant and placed him in a separate squad car.

While he was being transported to the sheriff's department, defendant told Collins and Wolf that he had hunted with the guns in the display case. Defendant stated that the guns belonged to his brother. After Collins arrived at the sheriff's department, he learned that Walter Schoening was defendant's brother and lived near the Essex Street address. Also, Collins learned that, about two weeks earlier, Walter was living at the Essex Street address. While at the jail, Welch told Collins and Wolf that defendant owned and used the weapons. A computer search revealed that defendant had been convicted of a felony and did not have a firearm owner's identification card. Collins obtained a warrant to search the Essex Street residence.

Defendant testified that, on the date in question, the officers knocked on the door for about two minutes and two or three times threatened to kick it down. The officers were knocking hard, and defendant could see the door moving in from the jamb. As defendant opened the door, the officers pushed their way in and asked for Welch. Defendant testified that, although Welch sometimes stayed overnight at the Essex Street residence, she did not live there.

The trial court found that the officers lawfully entered the residence to execute the arrest warrant. Also, it was appropriate for the officers to handcuff defendant to protect their safety. The court found further, however, that the officers did not have the right to question defendant. The court stated:

> "[W]here you are arresting someone basically without incident on an arrest warrant, [that] does not give police officers [the authority] to ask questions of other members within that household *** without giving them *Miranda* or having some type of probable cause that that person was involved in some type of illegal activity."

Accordingly, the trial court granted defendant's motion and denied the State's timely motion to reconsider. The State filed a certificate of impairment and a timely notice of appeal.

■ When reviewing a trial court's ruling on a motion to suppress evidence, we accord great deference to the trial court's factual findings and will reverse them only if they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 430-31 (2001). We review *de novo*, however, the trial court's legal conclusions and will reverse the ruling only if the trial court improperly applied the law to the accepted facts. *People v. Rush*, 319 Ill. App. 3d 34, 38-39 (2001); *People v. Nadermann*, 309 Ill. App. 3d 1016, 1020 (2000).

The pertinent facts here are essentially undisputed. The trial

court found that, absent probable cause to believe that defendant was involved in illegal activity, the officers could not ask defendant his name without first giving him *Miranda* warnings. The trial court erroneously found that *Miranda* applied here.

■ The fifth amendment to the United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. To safeguard the right against self-incrimination, the *Miranda* Court held that any person subject to a custodial interrogation must be warned before any questioning that he has a right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to counsel, either retained or appointed. Incriminating statements obtained before these warnings are administered are inadmissible at trial. *Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 706-07, 86 S. Ct. at 1612.

■ A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612; *People v. Kolakowski*, 319 Ill. App. 3d 200, 215 (2001). The relevant inquiry is whether, under the circumstances, a reasonable person would have felt that he was not at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112, 133 L. Ed. 2d 383, 394, 116 S. Ct. 457, 465 (1995). A custodial situation can occur in the home, and the relevant inquiry is whether a reasonable person would believe he was expressly or impliedly bound to remain in the presence of the officials. *People v. V.S.*, 244 Ill. App. 3d 478, 484 (1993).

●4 Although defendant was detained while handcuffed and seated on the living room couch, any custodial setting that may have existed had terminated by the time the officers asked defendant his name. When the officers asked the question, they had removed the handcuffs, allowed Welch to kiss defendant, and were in the process of taking Welch outside. The encounter between defendant and the officers essentially had concluded, and a reasonable person in defendant's position would not have believed that he was in custody.

Moreover, the question did not amount to "interrogation," defined as both express questioning and any words or actions on the part of the police, other than those normally accompanying arrest and custody, that the police should know are reasonably likely to elicit an incriminating response from the suspect. *People v. Olivera*, 164 Ill. 2d 382, 391-92 (1995). Here, the officers merely asked defendant his name and birth date so that they could include the information in their report. This falls within the scope of general on-the-scene

questioning that routinely occurs during the execution of a warrant and therefore does not require *Miranda* warnings. See *People v. Maiden*, 210 Ill. App. 3d 390, 396-97 (1991); *People v. Kilfoy*, 122 Ill. App. 3d 276, 287-88 (1984) (during execution of search warrant, officers asked defendant if she lived at residence to be searched).

Alternatively, defendant contends that, because there was evidence that Welch did not reside in the home, this court can affirm on the ground that the officers' entry was not lawful. See *People v. Cope*, 299 Ill. App. 3d 184, 190 (1998) (although arrest warrant is sufficient to allow police to enter home of person named in warrant if they have probable cause to believe the person is inside, police would need a search warrant to enter a third person's property to apprehend the same suspect). Although defendant testified that Welch did not reside in the home, Deputy Collins testified that he relied on information contained in the warrant and the Secretary of State's records. Defendant's contention fails because the trial court found that the officers properly entered the residence to execute the arrest warrant. Therefore, the court decided this factual issue adversely to defendant.

Relying on *People v. Coleman*, 194 Ill. App. 3d 336, 340-41 (1990), defendant also argues that the officers' conduct violated his fourth amendment rights. In *Coleman*, this court recognized that, just as a seizure reasonable at its inception may become unreasonable as a result of its duration, so may a lawful entry become an unlawful intrusion if the police remain beyond the time reasonably necessary to complete the purpose of their original lawful entry or engage in other unlawful conduct that renders the intrusion unreasonable. *Coleman*, 194 Ill. App. 3d at 340-41.

In *Coleman*, officers went to the defendant's home to execute a warrant to arrest his roommate. The officers arrested the roommate and saw in plain view what appeared to be drugs and drug paraphernalia. A field test of the substances revealed the presence of cocaine. The officers collected and inventoried the items found in plain view. The roommate stated that the defendant would return in about an hour. One of the officers called in additional officers who searched the home. When the defendant arrived, the officers arrested him and seized a paper bag that he was holding.

On appeal, the court stated that the officers were properly in the defendant's home to execute the arrest warrant. Also, it was not unreasonable for the officers to seize the items found in plain view and to take the steps necessary to secure them. The court concluded, however, that the police remained within the defendant's residence well beyond the time reasonably necessary to accomplish their lawful purpose and therefore violated the defendant's fourth amendment rights. *Coleman*, 194 Ill. App. 3d at 341-42.

Here, the officers did not remain longer than necessary to execute the arrest warrant. When the officers asked defendant his name, they had not yet removed Welch from the home. They delayed their exit for only a moment. We fail to see how it was unreasonable for the officers to attempt to ascertain the identity of an occupant so that they could document the circumstances surrounding the execution of the warrant. Defendant no longer was being detained, and the officers were not investigating him. *Cf. People v. Bailey*, 314 Ill. App. 3d 1059, 1063 (2001) (suppression of evidence required where, while detaining defendant during execution of warrant to arrest defendant's roommate, officer asked defendant if he had anything illegal on his person). Just as the officers in *Coleman* were justified in remaining long enough to secure the items found in plain view, the officers here were justified in remaining briefly to ask for information reasonably related to their lawful purpose for being present in the home.

Defendant has not challenged the officers' conduct after they entered the home the second time. Briefly, we note that returning to the home to retrieve Welch's purse was reasonably related to the execution of the warrant. Also, asking defendant if he had identification is analogous to the steps the officers in *Coleman* took to secure the items found in plain view. The officers here merely were following up on information they obtained legally and therefore did not remain longer than reasonably necessary to accomplish their lawful purpose.

Because the trial court improperly granted defendant's motion to quash arrest and suppress evidence, we reverse the judgment of the circuit court of Kane County and remand the cause for further proceedings.

Reversed and remanded.

O'MALLEY and BYRNE, JJ., concur.