NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250772-U

NO. 4-25-0772

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 5, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|         v. | ) | Adams County |
| JEFFREY T. BENNETT, | ) | No. 24CF542 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Holly J. Henze, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed defendant's convictions where the trial court properly denied defendant's motion to quash a search warrant and suppress evidence, as there were no defects in the search warrant and police officers' entry into defendant's residence and resulting search of the residence were lawful.

¶ 2    Defendant, Jeffrey T. Bennett, was convicted after a stipulated bench trial of unlawful possession with intent to deliver cannabis (720 ILCS 550/5(e) (West 2024)) and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2024)) and sentenced to six years in prison. On appeal, he argues that the trial court erroneously denied his motion to quash the search warrant and suppress evidence where the search warrant did not describe the items to be seized with sufficient particularity. For the following reasons, we affirm.

¶ 3    I. BACKGROUND

¶ 4    On August 15, 2024, in Adams County case No. 24-CF-542, the State charged

defendant by information with (1) armed violence (720 ILCS 5/33A-2(a) (West 2024)) (count I), (2) possession with intent to deliver more than 500 but less than 2,000 grams of cannabis (720 ILCS 550/5(e) (West 2024)) (count II), (3) unlawful possession of more than 500 but less than 2,000 grams of cannabis (720 ILCS 550/4(e) (West 2024)) (count III), (4) unlawful possession of a weapon by a felon (720 ILCS 5/24.1.1(a) (West 2024)) (count IV), and (5) unlawful possession of firearm ammunition by a felon (720 ILCS 5/24-1.1(a) (West 2024)) (count V). In Adams County case No. 24-CF-540, defendant was charged with (1) domestic battery of S.D. and (2) aggravated battery to S.D., a pregnant person. Defendant was arraigned on August 21, 2024, and pleaded not guilty.

¶ 5        On October 8, 2024, defendant filed a "Motion to Quash and Suppress Evidence." In this motion, he stated that on August 14, 2024, a judge issued a warrant for his arrest and a search warrant for his home on the basis that S.D. alleged that she was the victim of a domestic battery in defendant's kitchen on August 1, 2024. The search warrant directed officers to "take photographs of the kitchen area of the residence." Police officers executed the search warrant around 10:45 p.m. on August 14, 2024, and entered defendant's residence with the arrest warrant. Officers found in plain view two auto-opening knives, loose cannabis, and a box of 50 disposable vape pens. The plain view observation of these items prompted officers to request and obtain a second search warrant to search for "cannabis, united states currency, proof of residence, packaging materials, drug paraphernalia, and auto opening knives." Further, according to defendant's motion, body camera footage did not indicate that police were taking photographs of the kitchen area. Defendant argued in count I of the motion that the delay between the alleged offense of domestic battery and the issuance of the search warrant to search the kitchen and take photographs was too remote, especially because there were no indications that there was any

physical evidence that police could find during a search that would corroborate S.D.'s statements and "there was no reasonable cause to believe that specific 'things' to be search for and seized would be located on the Defendant's property pertaining to an alleged domestic battery offense." He also argued in counts II and III that the plain view exception did not apply, as (1) the officers searched behind a freestanding bar, which was outside of the area granted to them in the search warrant and (2) one of the officers had to manipulate a knife to determine if it was an auto-opening knife.

¶ 6        The trial court held a hearing on count I of defendant's motion on February 10, 2025. In addition to the arguments in his written motion, defense counsel argued that the first search warrant was a "pretext to get into [defendant's] home to look for other evidence." On February 18, 2025, the court issued a written order denying count I of defendant's motion, finding, in relevant part:

> "4. Although the Complaint and Search Warrant did not provide a description or itemization of actual items to be seized within the kitchen of the residence, the description that photographs be taken of the kitchen area where the incident was to have occurred within the residence is sufficiently particular and narrow in scope.
>
> 5. Law enforcement officers are not prohibited from initiating a pretextual traffic stop nor from obtaining a search warrant for pretextual reasons. In this case, the report of domestic violence obtained by the investigating officer provided a valid basis to request and obtain the search warrant."

¶ 7        On March 19, 2025, defendant waived his right to a jury trial. On March 28, 2025, the parties filed an agreed order, requesting the trial court rule on counts II and III of defendant's

motion to quash and suppress evidence based on arguments previously made by counsel. On April 24, 2025, the court entered a written order denying both counts and finding that based on the officers' body camera footage, they performed a protective sweep of the residence, which included looking behind a bar in a room directly adjacent to the kitchen. The officers found loose cannabis and a vape in plain view on the bar and a large bag containing smaller baggies in plain view behind the bar. They also found auto-opening knives in plain view on the kitchen counter. As a result, the court found that the first entry into defendant's home and the protective sweep of the home, which included the area behind the bar in the room adjacent to the kitchen, were lawful. Because the items located in plain view were not seized during the initial lawful search and protective sweep, they were not subject to suppression. Lastly, the court found that the second search warrant was lawfully obtained and executed, it would not be quashed, and the items seized as a result would not be suppressed.

¶ 8        At a hearing on April 30, 2025, the parties informed the trial court that they intended to proceed to a bench trial with stipulated evidence. The State indicated that it would be entering a *nolle prosequi* as to both counts of case No. 24-CF-540, as well as counts I, III, and V of case No. 24-CF-542. The stipulated bench trial thus would proceed only on counts II (possession with intent to deliver more than 500 but less than 2,000 grams of cannabis (720 ILCS 550/5(e) (West 2024))) and IV (unlawful possession of a weapon by a felon (720 ILCS 5/24.1.1(a) (West 2024))) of case No. 24-CF-542.

¶ 9        In their "Stipulated Existence of Evidence Consistent With a Stipulated Bench Trial," the parties outlined the following evidence. On August 10, 2024, S.D. contacted Quincy Police Department Inspector Patrick Hollensteiner and informed him that on August 1, 2024, she and defendant had an altercation. On that day, she went to defendant's home because he had

blocked her cell phone number. Defendant claimed the door was locked, but the key was still in the door. S.D. was eight weeks pregnant. She stated that while she was in the home, defendant threw her to the floor. Defendant denied S.D.'s account of events. On August 11, 2024, police officers obtained a statement from S.D., which was captured with body camera footage. S.D. said that she was scared to call the police about the events of August 1, 2024, for fear of being arrested.

¶ 10 On August 14, 2024, based on the information provided to the police by S.D., Hollensteiner prepared an affidavit and search warrant seeking entry into defendant's home to take photographs of the kitchen area where S.D. claimed the battery occurred. His affidavit included a summary of his contact with S.D., as well as text messages between defendant and S.D. on August 2, 3, 11, and 12, 2024. A judge signed the search warrant for defendant's residence and an arrest warrant for defendant at 11:23 a.m. The search warrant directed police officers to "take photographs of the kitchen area of the residence [w]hich have been used in the commission of, or which constitute evidence of the offense of Domestic Battery and Aggravated Battery to a Pregnant Person."

¶ 11 Around 7 p.m. on August 14, 2024, police officers conducted surveillance on defendant's home and observed defendant briefly leave and reenter his residence. Officers then observed a vehicle pull into defendant's driveway and leave around 20 minutes later. Officers followed this vehicle and conducted a traffic stop. A K-9 free air sniff gave a positive alert to the presence of narcotics, and a search of the car revealed five tetrahydrocannabinol (THC) vapes. The driver of the vehicle eventually admitted he had been at defendant's residence to give defendant money but denied purchasing any drugs from defendant.

¶ 12 At 8:45 p.m., officers returned to defendant's residence with the search warrant and arrest warrant. Upon entry and arrest of defendant in the kitchen, they then conducted a protective

sweep of the house. On the body camera footage, the house appeared to be relatively small, and the kitchen was the central room from which each other room stemmed. Police officers completed a cursory protective sweep of the house with guns and flashlights drawn within the first few minutes of being in the house, and in total, they were present in the residence for less than 15 minutes. Officers found in plain view (1) an auto-opening knife, (2) loose cannabis on top of a bar in the dining room, (3) a box of 50 disposable THC vapes, and (4) a large bag containing individual plastic baggies. Officers then applied for a second search warrant to seize "cannabis, united states currency, proof of residence, packaging materials, drug paraphernalia, and auto opening knives." That second search warrant was signed around 10:21 p.m. Upon execution of the second search warrant, officers found a white container with numerous plastic bags containing a total of 929.86 grams of cannabis, 5 individual bags containing a total of 76.5 grams of cannabis, boxes of Ziploc bags and a digital scale, a passport application for defendant, $14,000 in United States currency in the master bedroom on top of a dresser, $2,000 in United States currency in the master bedroom on top of a dresser under a hat, a black case with a .22-caliber Smith & Wesson firearm with several rounds of ammunition inside the gun and several more boxes of ammunition nearby, a box of 50 cannabis vape pens, another plastic container with 5 bags containing a total of 19.3 grams of cannabis, a psylocibin chocolate bar, loose cannabis, two marijuana blunts, a marijuana grinder, two auto-opening knives, and $1,352 in United States currency in defendant's wallet. Officers additionally took photographs of the kitchen pursuant to the first search warrant.

¶ 13       Defendant admitted he was a convicted felon and had a conviction in 2019 for firearms trafficking (a Class 2 felony) and a conviction in 2003 for possession of a controlled substance (a Class 4 felony). Defendant maintained his plea of not guilty.

¶ 14       On May 2, 2025, in a written order, the trial court found defendant guilty of both

count II (possession with intent to deliver more than 500 but less than 2,000 grams of cannabis (720 ILCS 550/5(e) (West 2024))) and count IV (unlawful possession of a weapon by a felon (720 ILCS 5/24.1.1(a) (West 2024))). On July 7, 2025, the court sentenced defendant to six years in prison on each count, to run concurrently.

¶ 15        This appeal followed.

¶ 16                              II. ANALYSIS

¶ 17        On appeal, defendant argues that the trial court erroneously denied his motion to quash and suppress evidence where the first search warrant failed to describe the items to be seized with sufficient particularity.

¶ 18        The fourth amendment to the United States Constitution provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV.

Similarly, the Illinois Constitution provides:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, § 6.

The search and seizure clause of the Illinois Constitution "is to be interpreted in lockstep with the

fourth amendment." *People v. Manzo*, 2018 IL 122761, ¶ 28.

¶ 19        In order to be valid, " 'a search warrant must state with particularity the place to be searched and the persons or things to be seized.' " *People v. Boose*, 2018 IL App (2d) 170016, ¶ 8 (quoting *People v. Garcia*, 2017 IL App (1st) 133398, ¶ 41). "This requirement is designed to 'prevent the use of general warrants that would give police broad discretion to search and seize.' " *Boose*, 2018 IL App (2d) 170016, ¶ 8 (quoting *People v. Burmeister*, 313 Ill. App. 3d 152, 158 (2000)). However, "[a] minute and detailed description of the property to be seized is not required." (Internal quotation marks omitted.) *People v. McCarty*, 223 Ill. 2d 109, 151 (2006). "Rather, the property must be so definitely described that the officer making the search will not seize the wrong property." (Internal quotation marks omitted.) *McCarty*, 223 Ill. 2d at 151. Importantly, "[w]hether a warrant satisfies the requirements of particularity is determined on a case-by-case basis," and "[t]he degree of particularity required varies with the nature of the case and the material or items to be seized." *People v. Economy*, 259 Ill. App. 3d 504, 512 (1994). "A major consideration for a court is the degree of exactitude or detail of description that could reasonably be expected under the circumstances, given the nature of the items involved and the progress of the police investigation at the time the warrant was issued." *People v. Rende*, 253 Ill. App. 3d 881, 886 (1993). "A generic description of the items to be seized is sufficient if a more specific description of the items to be seized is unavailable." *Rende*, 253 Ill. App. 3d at 886.

¶ 20        "On a motion to suppress, '[a] defendant must make a *prima facie* case that the evidence was obtained by an illegal search or seizure.' " *People v. Turner*, 2024 IL 129208, ¶ 45 (quoting *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003)). After that, the burden shifts to the State to rebut the defendant's evidence. *Turner*, 2024 IL 129208, ¶ 45. "In reviewing a circuit court's ruling on a motion to suppress, this court applies the two-part standard of review announced by

the United States Supreme Court." *Turner*, 2024 IL 129208, ¶ 46 (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). Under this standard, "the trial court's findings of historical fact are reviewed for clear error and may be rejected only if they are against the manifest weight of the evidence, but the trial court's ultimate ruling as to whether suppression is warranted is reviewed *de novo*." (Internal quotation marks omitted.) *Turner*, 2024 IL 129208, ¶ 46. Although defendant argues that the trial court's decision was manifestly erroneous, the facts of this case are not in dispute, so the issue of whether the description in the search warrant of items to be seized was sufficiently particular is one which we review *de novo*. See *Rende*, 253 Ill. App. 3d at 886.

¶ 21 The State compares this case to *United States v. Anderson*, 658 F. Supp. 3d 1000 (D. Kan. 2023). In *Anderson*, a search warrant directed officers to look for a "Black long sleeve shirt," "Dark blue jeans," "2 Black athletic shoes with the letter 'N' portrayed on the side," "Keys to a silver Cadillac Deville bearing Kansas tag 135MVK," "Photographs and measurements," and "Indicia of occupancy or ownership." *Anderson*, 658 F. Supp. 3d at 1008. The defendant there argued that the search warrant "lacked particularity *** by authorizing 'photographs and measurements' without further description." *Anderson*, 658 F. Supp. 3d at 1015. The federal district court ultimately found that "[n]o greater particularity in the authorization to photograph or measure was necessary or practical under the circumstances," reasoning that:

> "Reading the search warrant in a practical rather than technical sense, the inclusion of photographs and measurements among the items officers were authorized to search for is reasonably construed to mean the officers were authorized to photograph and measure to the extent their search revealed any information relating to the listed items. This authorization allowed searchers to reasonably ascertain and identify the things authorized to be searched and seized. It would have been

impractical to predict and itemize beforehand what particular photographs and measurements might have evidentiary value—for example, a picture or measurement showing the athletic shoes described in the warrant in proximity to a particular bedroom occupied by [the] Defendant." *Anderson*, 658 F. Supp. 3d at 1018.

The district court's rationale in finding the search warrant sufficiently particular thus rested on the fact that the warrant listed specific items to be searched, seized, and photographed. That rationale is inapplicable in this case, where the search warrant did not list any specific items to be searched and seized and thus did not offer officers any guidance in ascertaining which items in the kitchen to photograph.

¶ 22 This case is more similar to *People v. Sandage*, 2025 IL App (5th) 220495-U, ¶ 25, where the search warrant "authorized the seizure of 'cellular telephones and other electronic devices,' " and "a search of the defendant's cellphone for evidence that had been 'used in the commission of, or which constituted evidence of, the offense of Criminal Sexual Assault.' " The defendant argued that this warrant was overbroad and that a "more specific alternative would have protected the defendant's privacy while still permitting a legitimate investigation." *Sandage*, 2025 IL App (5th) 220495-U, ¶ 25. The Illinois Appellate Court, Fifth District, held that "the search warrant here was not too general for fourth amendment specificity purposes simply because it allowed the police to look at every file on the defendant's cellphone and decide which files satisfied the description." *Sandage*, 2025 IL App (5th) 220495-U, ¶ 42. The court explained that the language in the warrant and affidavit did not convey that the officer seeking the warrant "knew what particular information would be found in the defendant's cellphone consistent with this type of evidence," such as a method of communication or specific dates of communication. *Sandage*,

2025 IL App (5th) 220495-U, ¶¶ 38-40.

¶ 23    In this case, the search warrant was clear that the officers were directed only to take photographs and the only room they were to take them in was the kitchen. The trial court was correct that this was sufficiently particular. A minute and detailed description of each particular area of the kitchen to be photographed was not necessary. See *McCarty*, 223 Ill. 2d at 151. There was no danger that the officers executing the warrant would seize the wrong property. See *McCarty*, 223 Ill. 2d at 151. The alleged crime occurred in the kitchen of defendant's residence, and a warrant was necessary to enter defendant's residence to obtain photographs of the area to present at any possible trial stemming from these charges. Moreover, the information at that point in the investigation, as reflected by Hollensteiner's affidavit attached to the search warrant, did not include any more specific information about where exactly in the kitchen the alleged domestic battery occurred, so the search warrant could not have been more particular. See *Rende*, 253 Ill. App. 3d at 886; see also *Sandage*, 2025 IL App (5th) 220495-U, ¶¶ 38-40.

¶ 24    Although defendant claims without explanation that this search warrant was a pretext to enter his residence to search for drugs, the trial court was correct that "once probable cause exists, and a valid warrant has been issued, the officer's subjective intent in conducting the search is irrelevant." *United States v. Van Dreel*, 155 F.3d 902, 905 (7th Cir. 1998); see *Whren v. United States*, 517 U.S. 806, 812-13 (1996) (noting that previous cases "flatly dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification" and emphasizing that "a traffic-violation arrest *** would not be rendered invalid by the fact that it was a mere pretext for a narcotics search" (internal quotation marks omitted)); *People v. Thompson*, 283 Ill. App. 3d 796, 798-99 (1996) ("Even though the traffic offense masked other reasons for the stop unsupported by probable cause, ulterior motives cannot make otherwise lawful conduct illegal.

The pretextual nature of the stop did not invalidate it. The police had probable cause for the stop. The inquiry ends there."). Sufficient probable cause exists "when the totality of the facts and circumstances within the affiant's knowledge at the time the warrant is applied for 'was sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched.' " *Manzo*, 2018 IL 122761, ¶ 29 (quoting *People v. Griffin*, 178 Ill. 2d 65, 77 (1997)).

¶ 25        Here, the first search warrant was supported by probable cause that defendant committed a crime in his kitchen, as Hollensteiner's affidavit reflected that S.D. reported to police that defendant threw her to the floor in his kitchen on August 1, 2024, while she was pregnant. See *Manzo*, 2018 IL 122761, ¶ 29. Defendant has provided no support, other than a bare assertion, for his statement on appeal that the warrant was pretextual and has failed to meet his burden to show a *prima facie* case that the warrant lacked probable cause.

¶ 26        Moreover, the State is correct that notwithstanding the validity of the first search warrant, police officers were permitted to enter defendant's residence and conduct a protective sweep of the residence under the warrant issued for defendant's arrest, the validity of which defendant never challenged. "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). Additionally, "entry for purposes of executing a valid arrest warrant necessarily entails remaining within the residence for a reasonable amount of time to carry out the purpose of the warrant," which may also include "a search for the subject of the warrant," "a protective sweep," or a "search incident to a valid arrest for protection of the police and preservation of the evidence." *People v. Coleman*, 194 Ill. App. 3d 336, 341 (1990). A protective sweep "occurs as an adjunct to the serious step of taking a person

into custody for the purpose of prosecuting him for a crime," as officers have an interest "in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." *Maryland v. Buie*, 494 U.S. 325, 333 (1990). Officers are therefore allowed, "as a precautionary matter and without probable cause or reasonable suspicion, [to] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334. This search is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found," and "lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Buie*, 494 U.S. at 335-36.

¶ 27        In this case, police had a valid arrest warrant for defendant supported by probable cause. During their surveillance of defendant's residence, they observed that defendant was present. Their entry into defendant's residence to execute the arrest warrant was therefore lawful. After entering the residence, officers arrested defendant in his kitchen after he exited his master bedroom. In plain view in the kitchen, officers observed auto-opening knives. Though officers thus had reason to believe that defendant may have had other weapons within reach, they did not need probable cause or reasonable suspicion to conduct a protective sweep of the adjoining rooms. See *Buie*, 494 U.S. at 334. While officers were clearing the adjoining rooms, they observed additional items in plain sight in the dining room, consisting of cannabis, a box of vape pens, and a large bag containing smaller baggies, which they did not seize at that time. There is no evidence that the officers' sweep lasted an unreasonable amount of time or extended beyond a cursory inspection of spaces where a person may be found. The trial court was thus correct that officers lawfully entered defendant's residence for the purpose of executing the initial search warrant and arrest warrant.

They also conducted a lawful protective sweep of the adjoining rooms after executing the arrest warrant. The court thus correctly denied defendant's motion to quash and suppress evidence.

¶ 28                    III. CONCLUSION

¶ 29        For the reasons stated, we affirm the trial court's rulings with respect to the motion to quash and suppress evidence and judgments of conviction.

¶ 30        Affirmed.