NO. 4-05-0873          Filed 10/11/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| TYRONE WILLIAM WALTON, | ) | No. 04CF368 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott Drazewski, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In June 2005, a jury convicted defendant, Tyrone William Walton, of predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1) (West 2002)). The trial court later sentenced him to 22 years in prison and imposed a $200 sexual-assault fine and a $25 fine under the Violent Crime Victims Assistance Act (725 ILCS 240/10(b) (West 2002)). The court also gave defendant credit for 182 days served in jail prior to sentencing.

Defendant appeals, arguing that (1) he was denied a fair trial when (a) the State withheld certain evidence related to deoxyribonucleic acid (DNA), (b) the State withheld certain evidence that could have been used to impeach the victim, and (c) the State made improper comments during rebuttal argument; (2) he is entitled to one additional day of credit against his sentence for time served; and (3) his $25 fine imposed under the Act (725 ILCS 240/10(b) (West 2002)) should be reduced to $20. Because we agree only with defendant's last argument, we affirm his convic-

tion and sentence as modified and remand with instructions that the trial court amend the sentencing order to reflect a $20 fine under the Act.

## I. BACKGROUND

### A. Pretrial Proceedings

In April 2004, the State charged defendant with predatory criminal sexual assault, alleging as follows:

> "[D]efendant, being 17 years of age or over, knowingly committed an act of sexual penetration with L.F. who was under 13 years of age when the act was committed, said act involving the penis of the defendant and vagina of L.F."

On May 19, 2004, the State filed its discovery compliance, indicating that all materials pertaining to DNA evidence discoverable under Supreme Court Rule 417 (188 Ill. 2d R. 417) were available for inspection or copying or both.

At the conclusion of a late November 2004 hearing, defense counsel informed the trial court that he and the prosecutor had spoken informally regarding the required production of DNA-related material under Rule 417. Defense counsel also requested that the court set a date by which the State had to comply with defendant's request for such material. The court ordered that the State provide defendant with the requested material by December 28, 2004.

At a December 28, 2004, hearing, defense counsel

- 2 -

informed the trial court that he had received the State's response to his request for DNA-related material under Rule 417. Counsel also indicated that if he needed additional Rule 417 material, he would "try to work with" the prosecutor.

In mid-May 2005, defense counsel sent the prosecutor an e-mail, requesting (1) a laboratory worksheet for L.F.'s jeans, including handwritten notes or drawings indicating the areas where swatches were cut; (2) a physician's report accompanying the sexual-assault kit; and (3) a curriculum vitae for Kevin Zeeb, an Illinois State Crime Laboratory technician. That same day the prosecutor replied via e-mail, indicating that "[a]ll of their notes" were in the materials the prosecutor gave defense counsel, in accordance with Rule 417. Later in May 2005, defendant filed a "motion for additional discovery response," seeking, in pertinent part, (1) a formal supplemental discovery response identifying Rule 417 materials and (2) the court file in McLean County case No. 02-JA-76 (in which L.F. was adjudicated a neglected minor), which purportedly included information on a drug screen performed on L.F. at or near the time of the incident. Following an in camera review of the juvenile court file, the trial court denied defendant's request for the court file, upon determining that the file contained no relevant or material information.

At an early June 2005 status hearing, the prosecutor indicated that (1) she had brought to court the "DNA file" that the crime laboratory had provided the State and (2) defense

counsel could look at the State's and "compare exhibit by exhibit and page numbers." Defense counsel stated that he wanted to make sure that he had everything the State had.

Two days later, defendant filed a motion in limine, seeking to bar any reference at trial to semen and DNA-related evidence. The motion alleged, in pertinent part, that a determination as to the admissibility of such evidence was not possible without the State's production of the following items: (1) the curriculum vitae and job descriptions of certain hospital personnel and Zeeb; and (2) reports and memoranda made by hospital staff in conjunction with the sexual-assault kit that was administered to L.F. That same day, the State filed a supplemental answer to its discovery compliance, providing, in part, Zeeb's curriculum vitae.

At a hearing that same day, defense counsel stated that the State's disclosure of DNA-related material was insufficient. The prosecutor indicated that the State had disclosed all material required under Rule 417. In particular, the prosecutor stated that material related to Zeeb did not fall under Rule 417 because Zeeb's actions as a forensic technician constituted "precursor" actions to DNA analyses performed by Illinois State Police forensic analyst Debra Minton. The trial court determined that the requirements of Rule 417 applied to both Zeeb and Minton but not to the hospital personnel. The prosecutor informed the court that defense counsel "did have the opportunity to go through our DNA packet [of] compliance[,] and it does match

- 4 -

counsel's packet of compliance."  Defense counsel agreed with the prosecutor and stated that the State "has exactly what I had and [I] had some concerns that there might have been a few more pages of something floating out there and [the State has] represented that there weren't and I have matched mine page for page."  The court then denied defendant's motion to bar any reference at trial to semen and DNA-related evidence.

## B. Defendant's Trial

Because the parties are familiar with the evidence presented at defendant's June 2005 jury trial, we discuss it only to the extent necessary to place defendant's arguments in context.

Matthew Glim testified that in 2003, he was employed as a foster-care child-welfare specialist by The Baby Fold (a nonprofit agency that provides services to at-need children and families).  In March 2003, he was the child-welfare specialist for L.F., who was then 12 years old.  On the night of March 20, 2003, Glim received a telephone call informing him that L.F. had left her foster home earlier that evening without permission. Later that night, Glim met L.F. at her foster home and noticed her behaving "very oddly."  Glim took her to the hospital, where L.F. told him that she had had sexual intercourse that evening with a man (later identified as defendant).  Glim asked hospital personnel to perform a drug screen on L.F., and a physician informed Glim that the drug screen was "negative."

L.F. testified that on March 20, 2003, she went to The

Baby Fold to hang out. She met defendant and began talking with him. L.F. asked defendant if he wanted to meet later that evening, and he said "yes" and gave her his phone number. Two or three hours later, L.F. phoned defendant, and they made plans to meet at a fast-food restaurant in Normal. L.F. met defendant at the restaurant, and they left in his car. Defendant drove them to his friend's residence. After 20 or 30 minutes, L.F. and defendant got in the backseat of his friend's car, and they drove to Lake Bloomington. The friend parked the car and got out. L.F. and defendant stayed in the car and began kissing. Defendant took off L.F.'s blue jeans and underwear, put on a condom, got on top of L.F., and began having sexual intercourse with her. After about 10 or 15 minutes, defendant got out of the car, took off the condom, and walked away from the car. After throwing the condom "somewhere," defendant came back to the car. His friend then had sexual intercourse with L.F. without using a condom. After defendant returned L.F. to her foster home, L.F. was taken to the hospital, where a physician examined her and a nurse administered a sexual-assault kit.

L.F. also testified that she was currently taking prescribed medications for depression (Zoloft) and flashbacks (Resperdal). She denied using illegal drugs "within the month of" the incident.

McLean County sheriff's department detective Joe Zoeller testified that on the morning of March 21, 2003, he drove L.F. to Lake Bloomington. Once there, L.F. eventually identified

the parking area where the incident took place and directed Zoeller to the area defendant had walked toward after having sexual intercourse with her. Zoeller walked into that area and found a used condom lying in the grass. He collected the condom as evidence and delivered it to the Illinois State Police crime laboratory for examination and DNA testing. Zoeller stated that authorities were unable to identify L.F.'s second assailant.

Zeeb testified that the condom and the sexual-assault kit were sent to the crime laboratory, where he screened the collected evidence and turned some specimens over to the DNA laboratory for further testing.

After Zeeb's direct testimony and outside the jury's presence, defendant moved to have DNA-related testimony stricken because the State had not disclosed L.F.'s signed form granting her consent to release information and evidence to law enforcement. After considering counsel's arguments, the trial court denied defendant's motion upon determining that although the material fell within the requirements of Rule 417, the prosecutor's failure to disclose it was not willful.

Zeeb testified on cross-examination that a sexual-assault kit was normally accompanied by a medical-history report, which includes a physician's report. (A physician's report includes (1) the physician's physical findings, (2) the patient's medical chart and blood-work results, (3) the patient's description of the incident, and (4) release forms.) Such a report sometimes provides Zeeb with information regarding where to look

for specimens on collected evidence. He stated that the physician's report on L.F. should have been included in the copies of his biology notes that were provided to the State and he had no idea why the report was not disclosed to the State and then to the defense. In examining the blue jeans L.F. had been wearing during the incident, Zeeb made detailed handwritten notes and drawings which were not disclosed to the State and then to the defense.

Outside the jury's presence, the trial court directed the parties to go through Zeeb's file and determine what documents were relevant to the DNA discovery issue. The parties did so, producing a 19-page court's exhibit No. 1. Defense counsel indicated that he had not previously received 14 pages contained in that exhibit. Those 14 pages included (1) a "medical/forensic documentation form," which contained L.F.'s description of the incident and her assailant; (2) the laboratory worksheet, which included Zeeb's handwritten notes and drawings regarding his examination of L.F.'s blue jeans; (3) police reports; (4) a chain-of-custody sheet; and (5) Zeeb's handwritten notes regarding his creation of a blood-standard card for defendant. Counsel acknowledged that he had previously seen the police reports in other discovery materials, but he did not know that Zeeb may have considered those reports in handling evidence. The prosecutor stated that she also did not know that Zeeb had the police reports in his file.

Defense counsel then moved to strike all of Zeeb's

testimony based on the State's failure to disclose DNA-related material, pursuant to Rule 417. Counsel declined to request a continuance because the additional discovery material "will lead to the need to re[]calculate figures, *** to re[]evaluate chain[-]of[-]custody issues [and] we are in the middle of a trial here." Counsel also stated that his consulting expert was located out of state, and he did not know her availability or if funds were available to pay her for additional consulting. The prosecutor reiterated to the trial court that (1) the State and the defense had received the same DNA-related materials generated by the crime laboratory and (2) the State had not received the additional discovery materials. After considering counsel's arguments, the trial court denied defendant's motion to strike upon determining that although the materials fell within the requirements of Rule 417, the prosecutor's failure to disclose them was not willful. Instead, the court ordered that defendant could recall any State's witness or call any previously non-disclosed witness on defendant's list and examine that witness based on the aforementioned material that had not been disclosed to defendant. In fashioning the remedy, the court stated, in pertinent part, as follows:

> "[I]n evaluating the option[s] available to
> the court with reference to documents which
> were not produced in discovery, *** there are
> a number of options available to the court,
> exclusion [of evidence] being one of them,

but [that being] the most egregious penalty or sanction to impose upon a discovery violation[.]  [H]ere there is no evidence that the [S]tate, and by [S]tate I'm referring to the [S]tate's [A]ttorney in this matter, or any assistant[,] withheld any such evidence in a willful manner.

Each counsel [was] surprised, in essence, by the additional documents which the court has before it in [c]ourt's [e]xhibit [No. 1] as contained within [Zeeb's] file. One of the options available to the court, besides just admitting the evidence as if there was no discovery *** problem, is in essence to ignore it and just say [']tough.[']

That isn't appropriate in this circumstance.  The court has indicated that another option is to grant a continuance.  [Defense counsel] has elected not to seek a continuance, the court also has, again, the option of excluding the evidence, and the court also has the ability to enter such other orders as it deems just under the circumstances.

I still feel that the appropriate order under the circumstances is to allow [defense

counsel] to go ahead and either recall any previously called witness and/or to call any previously non[]disclosed witness on his list of witnesses during his case in chief, if it pertains to information that is contained within [p]ages 1 through 19 of [c]ourt's [e]xhibit [No. 1]."

Minton testified that she analyzed DNA found on L.F.'s underwear, which yielded two DNA fractions, one sperm fraction and one nonsperm fraction.  The sperm fraction contained a mixed profile of two individuals, one female and one male.  Minton opined that the characteristics of L.F.'s DNA profile and defendant's DNA profile were contained in that mixture.  She further opined that accepting that L.F.'s DNA profile was contained in the sperm fraction, "this mixed DNA profile would be expected to be seen in the population in one in 2.5 quadrillion black or one in 2.4 quintillion white or one in 3.5 quadrillion Hispanic unrelated individuals."  (Defendant is black.)  Minton's analysis of the outside of the condom yielded two DNA fractions, and the nonsperm fraction was a mixed profile of three individuals.  The characteristics of defendant's DNA profile were contained in that mixture.  Minton opined that approximately 57% of black, 47% of white, and 58% of Hispanic unrelated persons could not be excluded as having contributed to the nonsperm fraction mixture.  The sperm fraction revealed a partial profile of a two-person DNA mixture.  That mixed DNA profile was consistent with defendant's

- 11 -

DNA profile and one other individual, excluding L.F.

Based on the evidence presented, the jury convicted defendant of predatory criminal sexual assault (720 ILCS 5/12-14.1(a)(1) (West 2002)).

In early August 2005, the State filed a supplemental answer to its discovery compliance, which included the results of a March 21, 2003, drug screen performed on L.F. by hospital personnel. At a hearing on defendant's motion for a new trial, which was held a few days later in August 2005, defense counsel informed the trial court that (1) the State had just disclosed the results of L.F.'s March 21, 2003, drug screen, which showed that L.F. tested positive for amphetamines and barbiturates; and (2) the court's failure to order the State to disclose those results when defendant requested them in May 2005 resulted in defendant's being deprived of his right to cross-examine L.F. as to whether those drugs were consistent with her prescribed medications. The prosecutor informed the court that the State had received the drug-screen results one week prior to the August 2005 hearing and three days prior to the filing of its supplemental answer. After considering counsel's arguments, the court rejected defendant's claim regarding the drug-screen results, noting that the State did not receive the results until early August 2005 and after receiving those results, the State immediately turned them over to defendant. The court then denied defendant's motion for a new trial and sentenced him as earlier stated.

- 12 -

This appeal followed.

## II. ANALYSIS

### A. Defendant's Claims That He Was Denied a Fair Trial

#### 1. <u>Defendant's</u> <u>Claim</u> <u>That</u> <u>the</u> <u>State</u><br><u>Withheld</u> <u>DNA</u>-<u>Related</u> <u>Evidence</u>

Defendant first argues that he was denied a fair trial when the State withheld the following documents that contained DNA-related evidence, as required by Supreme Court Rule 417 (188 Ill. 2d R. 417):  (1) Zeeb's laboratory worksheet, which contained his handwritten drawings and notes, (2) the physician's report that accompanied the sexual-assault kit, (3) police reports that were included in Zeeb's biology report, (4) Zeeb's handwritten notes regarding his creation of defendant's blood-standard card, (5) the chain-of-custody sheet, and (6) the medical/forensic documentation form.  Specifically, he contends that in light of the State's violation of Rule 417, the trial court should have granted his motion to strike the DNA-related evidence and testimony thereto.  In response, the State argues, in part, that the complained-of documents do not come within Supreme Court Rule 417.  We need not decide whether the documents come within the rule because, even assuming that they did and a discovery violation occurred, we conclude that the court ordered an appropriate discovery sanction.

Supreme Court Rule 417 requires disclosure of all relevant materials relating to DNA, including, but not limited to, "all reports, memoranda, notes, phone logs, contamination records, and data relating to the testing performed in the case."

188 Ill. 2d R. 417(b)(i).  The purposes of the discovery rules are to (1) prevent surprise or unfair advantage to either party and (2) aid in the search for truth.  People v. Turner, 367 Ill. App. 3d 490, 499, 854 N.E.2d 1139, 1147 (2006).  Sanctions for violating a discovery rule are intended to accomplish the purposes of discovery, not to punish the offending party.  In addition, sanctions should be fashioned to meet the particular circumstances of each case.  Turner, 367 Ill. App. 3d at 499, 854 N.E.2d at 1147.  The sanction of excluding certain evidence is appropriate only in the most extreme situations and is disfavored "because it does not contribute to the goal of truth-seeking." Turner, 367 Ill. App. 3d at 499, 854 N.E.2d at 1147.  In choosing a sanction, the trial court should consider the following factors:  (1) the strength of the undisclosed evidence, (2) the likelihood that prior notice could have helped discredit the evidence, and (3) the willfulness of the State's violation. People v. Mullen, 313 Ill. App. 3d 718, 736, 730 N.E.2d 545, 560 (2000).

The determination as to an appropriate sanction for a discovery violation lies with the trial court's sound discretion. Thus, we will not disturb the trial court's determination absent an abuse of that discretion.  Turner, 367 Ill. App. 3d at 499, 854 N.E.2d at 1147.  "'An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.'"  People v. Sutherland, 223 Ill. 2d 187,

- 14 -

272-73, 860 N.E.2d 178, 233 (2006), quoting People v. Hall, 195 Ill. 2d 1, 20, 743 N.E.2d 126, 138 (2000).

The record shows that (1) the evidence of defendant's guilt was overwhelming, given the DNA evidence and L.F.'s testimony; (2) none of the materials at issue called into question the strength of either the DNA evidence or L.F.'s testimony that defendant penetrated her vagina with his penis; (3) the prosecutor opened the State's DNA file to the defense; (4) the State's DNA file contained the exact same materials that defendant's DNA file contained, and nothing indicated that more DNA-related materials existed; and (5) as the trial court found, the State's failure to disclose the materials was not willful. Accordingly, reviewing the court's determination as to the appropriate sanction under the applicable standard of review, we conclude that the court's ruling was neither arbitrary, fanciful, nor unreasonable. We thus further conclude that the court's determination did not constitute an abuse of discretion. In so concluding, we agree with the trial court that the particular circumstances of this case did not warrant the extreme sanction of excluding the DNA-related evidence. We also note that by allowing defense counsel to examine the DNA file provided to the State by the crime laboratory, the State appeared to have followed an open-file policy, which not only is good practice, but particularly helpful when trying to determine whether the State had been acting in good faith if a discovery problem arises.

## 2. Defendant's Claim That the State Withheld Impeachment Evidence

Defendant next argues that he was denied a fair trial when the State failed to disclose until after trial the results of L.F.'s March 21, 2003, drug screen, which showed that she tested positive for amphetamines and barbiturates. Specifically, he contends that the State's failure to disclose the drug-screen results constituted a Brady violation (Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963)). We disagree.

"To establish a Brady violation, the undisclosed evidence must be both favorable to the accused and material." People v. Barrow, 195 Ill. 2d 506, 534, 749 N.E.2d 892, 910 (2001). Under Brady, favorable evidence is material "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" People v. Coleman, 183 Ill. 2d 366, 393, 701 N.E.2d 1063, 1077 (1998), quoting United States v. Bagley, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383 (1985). The materiality determination "turns on whether the '[g]overnment's evidentiary suppression "undermines confidence in the outcome of the trial,"'which *** 'is not a sufficiency[-]of[-]the[-]evidence test.'" Coleman, 183 Ill. 2d at 393, 701 N.E.2d at 1077, quoting Kyles v. Whitley, 514 U.S. 419, 434, 131 L. Ed. 2d 490, 506, 115 S. Ct. 1555, 1566 (1995), quoting Bagley, 473 U.S. at 678, 87 L. Ed. 2d at 491, 105 S. Ct. at 3381. The Brady rule has been codified by Supreme Court Rule 412(c) (134 Ill. 2d R. 412(c)), which requires the State to "disclose to defense counsel any

- 16 -

material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged."

Initially, we agree with the State that based on (1) the trial court's June 2005 determination that juvenile case No. 02-JA-76 contained nothing relevant or material to defendant's case, (2) Glim's trial testimony that the March 21, 2003, drug-screen results were negative, and (3) L.F.'s trial testimony that she had not been using illegal drugs on the night of the incident, no indication existed that L.F.'s drug-screen results could be used to impeach L.F. Thus, the State was under no duty to use due diligence to obtain and disclose those drug-screen results.

Moreover, L.F.'s drug-screen results were not material under Brady. As stated above, evidence will be deemed material only if a reasonable probability exists that the result of the proceeding would have been different if the evidence had been disclosed to the defense. See Barrow, 195 Ill. 2d at 534, 749 N.E.2d at 910 (discussing Brady). In light of the overwhelming evidence of defendant's guilt, we conclude that no reasonable probability exists that, even if L.F.'s drug-screen results had been disclosed to the defense, the result of defendant's trial would have been different.

### 3. Defendant's Claim That the State Made Improper Comments During Rebuttal Closing Argument

Defendant next argues that he was denied a fair trial when the State made improper comments during rebuttal closing argument. Specifically, he complains of the following remark

- 17 -

about defense counsel: "[L]ike a magician, [he] holds up one hand, keep your eye here, while this is going on here." Citing People v. Emerson, 97 Ill. 2d 487, 455 N.E.2d 41 (1983), defendant asserts that the comment "exceeded the boundaries of fairness." We disagree.

In rebuttal, the prosecutor made the following pertinent comments:

"Ladies and gentlemen, I will respond to counsel's arguments by telling you that you will get these written instructions, and one of the instructions is to consider--to confine your deliberations to the evidence and to reasonable inferences to be drawn from the evidence. You are also to consider the evidence, all of the evidence, in the light of your own observation and experience in life.

Why am I mentioning this? Because as [defense counsel] stood up here and talked to you, how many times did he focus on the condom and completely ignore the panties where we have those astronomical frequencies? None. Because, like a magician, [he] holds up one hand, keep your eye here, while this is going on here."

Defendant objected, and the trial court overruled the objection.

Our supreme court has held that "'[u]nless based on

some _evidence_, statements made in closing arguments by the prosecution which suggest that defense counsel fabricated a defense theory, attempted to free his client through trickery or deception, or suborned perjury are improper. [Citations.]'" (Emphasis in original.) People v. Jackson, 182 Ill. 2d 30, 81, 695 N.E.2d 391, 416 (1998), quoting Emerson, 97 Ill. 2d at 497, 455 N.E.2d at 45. In Emerson, 97 Ill. 2d at 497, 455 N.E.2d at 45, the supreme court concluded that a prosecutor's comments required reversal where, among other things, the prosecutor suggested that defense counsel laid down a smokescreen "'composed of lies and misrepresentations and innuendoes'" and that counsel, like all defense attorneys, tried to "'dirty up the victim.'"

In this case, the prosecutor's comment, which was directed toward defense counsel personally, was improper. Nonetheless, we conclude that the impropriety in the prosecutor's comment does not require reversal. Improper closing remarks require reversal only if they substantially prejudice a defendant, taking into account (1) the content and context of the comment, (2) its relationship to the evidence, and (3) its effect on the defendant's right to a fair and impartial trial. People v. Johnson, 208 Ill. 2d 53, 115, 803 N.E.2d 405, 440-41 (2003). In addition, our supreme court has stated that "[a] reviewing court will find reversible error only if the defendant demonstrates that the improper remarks were so prejudicial that real justice was denied or that the verdict resulted from the error." People v. Perry, 224 Ill. 2d 312, 347, 864 N.E.2d 196, 218

- 19 -

(2007).

The prosecutor's comment was brief and isolated and is thus clearly distinguishable from the pattern of inflammatory and prejudicial comments that resulted in a new trial for the defendants in Emerson. In addition, the trial court instructed the jury that closing arguments are not evidence and any closing comments made by the attorneys that are not based on the evidence should be disregarded. When viewed in context and in light of the overwhelming evidence of defendant's guilt, the complained-of remark was not so prejudicial as to deprive defendant of a fair trial or change the outcome of the proceeding.

### B. Defendant's Claim That He Is Entitled to One Additional Day of Sentencing Credit

Defendant next argues that he is entitled to one additional day of credit for time served prior to sentencing. The State responds that defendant is not entitled to credit for the day on which he was sentenced and remanded to the Department of Corrections (DOC). We agree with the State.

Section 5-8-7 of the Unified Code of Corrections provides, in pertinent part, as follows: "The offender shall be given credit on the determinate sentence *** for time spent in custody as a result of the offense for which the sentence was imposed ***." 730 ILCS 5/5-8-7(b) (West 2004). In addition, under section 110-14 of the Code of Criminal Procedure of 1963, offenders are entitled to a $5-per-day credit against imposed fines for time spent in pretrial custody. 725 ILCS 5/110-14 (West 2004).

- 20 -

The record shows that defendant is entitled to 182 days of credit for time served from April 14, 2004, through April 14, 2004, and February 14, 2005, through August 11, 2005.  The trial court properly declined to credit defendant for August 12, 2005, the day he was sentenced and remanded to DOC.  See People v. Allen, 371 Ill. App. 3d 279, 284-85, 868 N.E.2d 297, 302 (2007) (holding that a defendant is not entitled to sentencing credit for the day he is remanded to DOC); People v. Foreman, 361 Ill. App. 3d 136, 157, 836 N.E.2d 750, 768 (2005) (same holding).

### C. Defendant's Claim That His Violent Crime Victims Fine Should Be Reduced to $20

Last, defendant argues that his $25 fine imposed under the Act (725 ILCS 240/10(b) (West 2002)) should be reduced to $20.  The State concedes that defendant's fine should be reduced, and we accept the State's concession.

Section 10(b) of the Act provides, in pertinent part, that "there shall be an additional penalty collected from each defendant upon conviction of any felony *** of $4 for each $40, or fraction thereof, of fine imposed."  725 ILCS 240/10(b) (West 2002).

In this case, the trial court ordered defendant to pay a $200 sexual-assault fine.  Under section 10(b) of the Act, defendant was required to pay an additional penalty of $4 for each $40 of his sexual-assault fine.  Thus, the court should have assessed a $20 fine under the Act, not $25.  Accordingly, we remand with instructions that the court amend the sentencing order to reflect a $20 fine.

- 21 -

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment as modified and remand with directions. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2004); see also People v. Smith, 133 Ill. App. 3d 613, 620, 479 N.E.2d 328, 333 (1985), citing People v. Nicholls, 71 Ill. 2d 166, 179, 374 N.E.2d 194, 199 (1978).

Affirmed as modified and cause remanded with directions.

MYERSCOUGH and COOK, JJ., concur.