THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN
C. ELDER, Defendant-Appellant.

Fourth District    No. 4—08—0424

Opinion filed June 30, 2009.

Michael J. Pelletier, Gary R. Peterson, and Susan M. Wilham, all of State
Appellate Defender's Office, of Springfield, for appellant.

John P. Schmidt, State's Attorney, of Springfield (Patrick Delfino, Robert

J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE POPE delivered the opinion of the court:

In December 2004, defendant, John C. Elder, was charged with burglary (720 ILCS 5/19—1 (West 2004)) and theft (720 ILCS 5/16—1 (West 2004)). In January 2008, a jury convicted defendant of theft but acquitted him on the burglary charge. He was sentenced to 10 years' imprisonment with credit for 362 days' time served. Defendant appeals, arguing the trial court erred when it (1) denied his motion to suppress items listed on the search warrant because the descriptions were vague and overbroad and (2) failed to credit defendant for time he spent in custody in Arizona. We affirm as modified and remand with directions.

## I. BACKGROUND

Between 2 a.m. and 3 a.m. on December 3, 2004, John Rutherford was walking home from a gas station on the north end of Springfield. As he approached his house on Calhoun Avenue, he noticed a dark-colored van sitting in a nearby lot and two men trying to get into the back of his garage. The men were wearing dark coats, and one of them had a silver or gray stripe down the sleeve. Rutherford went into the house and called the Sangamon County sheriff's department. When the sheriff's department and Springfield police arrived, Rutherford described the van and the two men he saw breaking into his garage.

Sergeant Dan Parrish was a deputy with the Sangamon County sheriff's department in December 2004. Around 3:40 a.m. on December 3, 2004, Sergeant Parrish pulled over defendant's van after hearing a dispatch describing a van involved in an attempted burglary. After Sergeant Parrish explained to defendant why he pulled him over, defendant told Sergeant Parrish that he and his son, the passenger, were out on their newspaper route. Defendant gave Sergeant Parrish permission to search the van. Inside the van, Sergeant Parrish observed, among other things, some tools, two chain saws, a pry bar, and gloves. Defendant explained he had purchased one chain saw from a Big R store and the other from a private individual. However, Sergeant Parrish noticed one of the chain saws was stamped "Phil. Township," indicating it was property of Philadelphia Township in Cass County. Sergeant Parrish contacted the Cass County sheriff's department and learned that some equipment had been stolen from the county. Sergeant Parrish immediately read defendant his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 706-07, 86 S. Ct. 1602, 1612 (1966)), and questioned him about the at-

tempted burglary at the Rutherford residence. Defendant admitted attempting to burglarize the Rutherford garage.

In December 2004, William Ratliff was field superintendent for Evans Construction (Evans). At the time, Evans was building new facilities for Black Hawk School in Springfield. On the morning of December 3, 2004, Ratliff received a phone call from an Evans carpenter, informing him someone had broken into the Evans work trailer at Black Hawk School during the night. Ratliff went to the jobsite and found the door of the trailer had been pried open. A generator and hammer drill were missing.

Around 9 a.m. on December 3, 2004, Sangamon County deputy sheriff Claricel Agans-Dominquez visited defendant's home. Defendant's wife gave Deputy Agans-Dominquez and other officers permission to search inside and around the house. At defendant's residence, Cass County detectives recovered a stolen power washer and other property stolen from their jurisdiction. During the search of defendant's home, investigators found documents indicating defendant rented two storage units at Thriftee Storage.

Five days after defendant's arrest, Captain Tom Henrickson of the Sangamon County sheriff's department wrote an affidavit for a search warrant to search the two Thriftee Storage units. The affidavit provided the following information: (1) defendant had admitted to Cass County authorities that he was involved in approximately six burglaries in Cass County where he took a variety of equipment and tools; (2) the items stolen in Cass County included chain saws and a power washer recovered by Sangamon County authorities; (3) defendant also admitted taking other property in Cass County, including "a plasma welder," "a DeWalt drill," "the chain saws," "numerous power tools, of various makes and models," and "several hand tools and toolboxes"; (4) during the investigation, Captain Henrickson spoke with Mike Carr, an acquaintance of defendant's who was out of prison on parole, about his involvement with defendant; (5) on the morning of December 3, 2004, defendant asked Carr to meet him at Thriftee Storage to help move some items to an undisclosed location; (6) inside storage unit 9, Carr observed a welder, a DeWalt power tool and other power tools, kitchen cabinets, and other property; (7) inside storage unit 27, Carr saw power tools, an air compressor, and plastic storage containers labeled "Evans Construction"; (8) Carr believed the items in the units were stolen and refused to help defendant move them; (9) defendant contacted Carr the following day and offered to pay him to help; (10) Carr reiterated he did not want to be involved in illegal activity and refused to help; and (11) defendant did not deny to Carr that the items in the units were stolen.

The search warrant submitted with the affidavit listed the items to be seized as "any and all power tools, hand tools, welders, guns, kitchen cabinets and appliances, air compressors, other property[,] or other evidence of criminal activity."

Once the officers gained authorized entry to both storage units, they observed more than 200 tools, including a Titan generator and a power hammer drill. Of the approximately 200 tools retrieved from the units, 50 were returned to the identifiable owners and 150 remained with the sheriff's department.

In December 2004, the State charged defendant with (1) burglary for entering an Evans Construction Company building with the intent to commit a theft, and (2) theft, for exerting unauthorized control over a Titan generator belonging to Evans Construction. During the pendency of the case and while defendant was out on bond, he left the state and traveled to Arizona. In August 2007, defendant was detained in Arizona and was returned to Illinois in September 2007. At his January 2008 trial, defendant was convicted of theft and sentenced as stated.

This appeal followed.

## II. ANALYSIS

### A. Motion To Suppress

In reviewing the denial of a motion to suppress, we first consider whether the trial court made and relied on any factual findings. *People v. Capuzi*, 308 Ill. App. 3d 425, 430, 720 N.E.2d 662, 666 (1999). Those findings will not be disturbed on appeal unless they are manifestly erroneous. *People v. Sorenson*, 196 Ill. 2d 425, 430-31, 752 N.E.2d 1078, 1083 (2001). However, we review *de novo* the trial court's ultimate decision denying defendant's motion to suppress. *People v. Pitman*, 211 Ill. 2d 502, 512, 813 N.E.2d 93, 101 (2004).

The items identified in a search warrant need not be described in minute detail. *People v. McCarty*, 223 Ill. 2d 109, 151, 858 N.E.2d 15, 41 (2006). An item listed in a search warrant should be described accurately enough that an officer would not mistakenly seize the wrong property. *McCarty*, 223 Ill. 2d at 151, 813 N.E.2d at 41. Where the items enumerated in the warrant constitute a large portion of the inventory searched, generic descriptions are generally acceptable. *Capuzi*, 308 Ill. App. 3d at 431, 720 N.E.2d at 667. However, general descriptions are not appropriate if detailed descriptions are available to the investigating officers. *Capuzi*, 308 Ill. App. 3d at 431, 730 N.E.2d at 667.

In *People v. Allbritton*, 150 Ill. App. 3d 545, 545, 502 N.E.2d 83, 83 (1986), the trial court quashed a warrant to search the defendant's

residence because it described the stolen items as " 'jewelry, chains, cuff-links, sweater-closers[,] and diamonds.' " In affirming the trial court's ruling, the appellate court considered "the particularity of the description in the affidavit and the search warrant, the additional detail that reasonably could have been provided under the circumstances, and the extent to which such additional details would have guided the officers executing the warrant." *Allbritton*, 150 Ill. App. 3d at 547, 502 N.E.2d at 84. The court noted jewelry and jewelry chains are not easily identifiable as contraband, particularly in a home, where one would expect to find a variety of jewelry. *Allbritton*, 150 Ill. App. 3d at 548, 502 N.E.2d at 85. Further, the victim provided detailed descriptions of the stolen property to police which police failed to include in the affidavit or warrant. *Allbritton*, 150 Ill. App. 3d at 548, 502 N.E.2d at 85.

Similarly, in *Capuzi*, 308 Ill. App. 3d at 432, 720 N.E.2d at 668, the trial court found more detailed descriptions of property seized from defendants' homes were necessary to avoid violating the fourth amendment of the United States Constitution. The case involved property commonly found in a household, such as jewelry, golf clubs, shoes, and currency. *Capuzi*, 308 Ill. App. 3d at 432, 720 N.E.2d at 668. The investigating officers also had access to more detailed descriptions of the property yet failed to include the descriptions on the warrant. *Capuzi*, 308 Ill. App. 3d at 432, 720 N.E.2d at 668.

■ In this case, the search warrant listed the following property to be seized: "[a]ny and all power tools, hand tools, welders, guns, kitchen cabinets and appliances, air compressors, or other property or other evidence of criminal activity." At defendant's motion to suppress hearing, the trial court found more specificity in the search warrant was not required as a practical matter. The court stated, "[I]n a case like this, an alleged serial burglary involving at least two jurisdictions that I know of, Sangamon and Cass Counties, it would be almost impossible for the search warrant to list specifically which items they are searching for."

We agree with the trial court's assessment in this case because of the number of burglaries, the amount of stolen property, Carr's observations inside the storage units, and defendant's admitted penchant for stealing items that can generally be categorized as tools and equipment. Additionally, the location searched in this case was a storage unit, not a residence. Unlike the case where officials risked seizing the wrong jewelry in a residential search, in this case defendant had already admitted stealing a variety of tools and equipment, and Carr had told authorities he believed the property in defendant's storage units was stolen. Accordingly, the court properly denied defendant's motion to suppress.

## B. Sentencing Credit

Defendant argues he is entitled to additional sentencing credit for his detention in Arizona between August 2007 and September 11, 2007. The State disagrees, arguing the record does not show defendant was held in Arizona on the Illinois charges. The State also contends defendant is not entitled to credit for the day on which he was sentenced and remanded to the Illinois Department of Corrections (DOC). In his reply brief, defendant cites *People v. White*, 237 Ill. App. 3d 967, 970-71, 605 N.E.2d 720, 722-23 (1992), for the proposition that the day a defendant is sentenced is counted as a day spent in custody for sentence-credit calculations. The State relies on *People v. Walton*, 376 Ill. App. 3d 149, 161, 875 N.E.2d 197, 207 (2007), in arguing defendant is not entitled to credit for the day he was remanded to DOC.

We initially address the issue of whether defendant is entitled to credit for the day he was remanded to DOC custody. While a defendant is entitled to sentencing credit for the day he is sentenced (*People v. Allen*, 371 Ill. App. 3d 279, 284, 868 N.E.2d 297, 302 (2006)), the trial court should not issue credit for the sentencing day if he is remanded to DOC custody the same day (*Walton*, 376 Ill. App. 3d at 161, 875 N.E.2d at 207). The *White* decision, on which defendant relies, fails to state whether the defendant was remanded to DOC custody on the same day he was sentenced, a day for which the reviewing court decided he was entitled to credit. In the present case, as defendant was both sentenced and remanded to DOC custody on April 9, 2008, the court properly denied him credit for that day.

We next address whether defendant was entitled to credit for time served in Arizona. A defendant is entitled to sentencing credit for "time spent in custody as a result of the offense for which the sentence was imposed." 730 ILCS 5/5—8—7(b) (West 2006). Time spent detained in another state is credited against a defendant's sentence so long as the confinement in the other jurisdiction was a result of the offense for which defendant was sentenced. *People v. Thomas*, 313 Ill. App. 3d 998, 1009-10, 730 N.E.2d 618, 628 (2000), *overruled on other grounds by Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004); *People v. Hatfield*, 257 Ill. App. 3d 707, 711, 630 N.E.2d 463, 466 (1994).

Neither party in this case provides the dates defendant was held in custody in Arizona. At his April 9, 2008, sentencing hearing, defendant first requested 28 days' credit for time served in Arizona. Then, at his motion to reconsider sentence hearing on June 3, 2008, defendant asked for 29 days' credit for time served in Arizona. Finally, in his brief, defendant failed to specify the number of days in Arizona

custody and provided the range of August 2007 to September 11, 2007. Thus, we are unable to determine exactly how many days defendant spent in Arizona custody.

Defendant stated at the motion to reconsider sentence hearing that his detainment in Arizona related to the Illinois charges. Similar to the facts in *Thomas*, 313 Ill. App. 3d at 1010, 730 N.E.2d at 628, in the case *sub judice*, defendant served time in another state, requested credit for the time he was detained in the foreign jurisdiction, and the State did not dispute that defendant served time in the other state for the Illinois crime.

The parties appear to agree, if defendant is to be credited for time served in Arizona, the calculation begins on the date defendant waived extradition. They rely on *People v. Rhoden*, 299 Ill. App. 3d 951, 702 N.E.2d 209 (1998), and *People v. Gardner*, 172 Ill. App. 3d 763, 527 N.E.2d 155 (1988). The court in *Rhoden*, 299 Ill. App. 3d at 963, 702 N.E.2d at 217, relied on *Gardner*, 172 Ill. App. 3d at 768, 527 N.E.2d at 158-59, for the proposition that credit for incarceration in a foreign state begins upon waiver of extradition. However, the court in *Gardner*, 172 Ill. App. 3d at 765, 527 N.E.2d at 156-57, was faced with a situation where the defendant had been arrested in Arkansas for murders he committed in Arkansas. At some point in time, an Illinois detainer was lodged against him and he waived extradition. *Gardner*, 172 Ill. App. 3d at 768, 527 N.E.2d at 158-59. The defendant sought credit for all of the time he spent in an Arkansas jail, including the time prior to the lodging of the Illinois detainer and his waiver of extradition. *Gardner*, 172 Ill. App. 3d at 767-68, 527 N.E.2d at 158. The court found he was entitled to credit for time served following his waiver of extradition. *Gardner*, 172 Ill. App. 3d at 768, 527 N.E.2d at 158. Because we find no indication in the present case that defendant was detained in Arizona for a crime committed there, the question of when he waived extradition or when the State issued a detainer warrant, as addressed in *Gardner*, 172 Ill. App. 3d at 768, 527 N.E.2d at 158, is inapplicable to this case. Thus, the trial court erred in denying defendant credit for the time served in Arizona. However, as we are unable to determine the exact number of days for which defendant should be granted credit, we remand for the trial court to make that determination and issue an amended sentencing judgment. Assuming defendant was arrested in Arizona on the Illinois warrant for his Illinois crime, he is entitled to credit for the time served in Arizona, pending his transfer to Illinois.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment as

modified and remand with directions. As part of our judgment, we award the State its $50 statutory assessment as costs of this appeal.

Affirmed as modified and cause remanded with directions.

KNECHT and STEIGMANN, JJ., concur.